UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10363-RGS

UNITED STATES OF AMERICA

v.

BARRY J. CADDEN and 13 OTHERS

MEMORANDUM AND ORDER ON
APPEAL OF A DECISION OF THE MAGISTRATE JUDGE

September 30, 2015

STEARNS, D.J.

This matter is before the court on an appeal of a decision entered by Magistrate Judge Boal on a joint motion brought by all defendants to compel the government to produce six categories of discovery in this complex, document-laden 131-count indictment.  A hearing on the appeal was held on September 29, 2015.  After considering the parties' arguments and briefs, the appeal will be <u>GRANTED</u> in part, and <u>DENIED</u> in part.[1]

---

[1] Magistrate Judge Boal is to be commended for her careful review of the motion as reflected in her 18-page decision of July 13, 2015.  I substantially agree with her legal analysis in all but one respect.  In two others, I choose to exercise broader discretion than the Magistrate Judge thought appropriate for her to decide.  I do so in the interest of insuring that the case continues to progress towards the April 2016 trial date.

The six areas in which compelled discovery is sought are as follows:

(1)     A list of Bates numbers of the documents (where not previously identified) shown to a witness for review or comment in the interview reports (362 in total) produced by the government;

(2)     Documents in the files of various state officials, state agencies, and the federal Drug Enforcement Administration (DEA) gathered contemporaneously with the government's investigation, among them the Attorney General of Michigan, the Massachusetts Department of Health, and the Massachusetts Board of Pharmacy;

(3)     A list of the search terms used by the government to capture the 1.1 million emails that were produced to defendants;

(4)     A preliminary list of the government's proposed trial exhibits;

(5)     An order setting a date "well in advance of trial" for the production of Grand Jury transcripts and exhibits; and

(6)     A list of "all known *Brady* material within the government's production."

I will proceed in the order in which the categories were presented, supplementing the Magistrate Judge's analysis only where necessary to explain where I deviate from her conclusions.

Category 1

Defendants' request that the government identify (by Bates number) the exhibits (documents) shown by investigators to witnesses during the reported interviews is a reasonable one that I will allow. I recognize, as did the Magistrate Judge, that the government has offered "to assist defense counsel with questions about discovery, including identification of exhibits to witness interviews." M.J. Dec. at 5. I do not, however, see any utility in the insertion of an extra step into the process by requiring defendants to proceed on a piecemeal witness-by-witness basis in attempting to identify the exact documents shown to a witness. Contrary to the government's suggestion that defendants' request puts the government in the position of "preparing both sides of the case at once," Opp'n at 8, the accurate identification of the exhibits is information that the government will (and should) want to have for its own purposes. Having the government take the initiative in the matter is all the more appropriate in that the government has unique access to the parties who possess the information sought – who are the investigators who conducted the interviews and not the interviewees themselves.

Category 2

I agree with the Magistrate Judge's analysis of what constitutes the "prosecution team" with respect to the government's duty to produce discoverable information, including *Brady* material, and her conclusion that "[m]aterials in the possession of state agencies are generally not in the [federal] government's possession, custody, or control," M.J. Dec. at 7, absent a showing of a joint investigation in which each sovereign agreed to act as the agent of the other (which has not been made here).  *See United States v. Bender*, 304 F.3d 161, 163-164 (1st Cir. 2002).[1]  *Cf. Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (*Brady* does not create any "general constitutional right to discovery in a criminal case").[2]

---

[1] There is no reason to doubt the government's representation that, while the federal DEA was not a participant in the investigation, to the extent it possesses any information relevant to the prosecution, that information has been produced in its entirety to defendants. Opp'n at 9 n.8.

[2] As the court pointed out at the hearing, given the realities of a constitutional framework that respects the dual sovereignties of state and federal governments, this court has no power to order the Attorney General of Michigan or any other state official to produce evidence from his or her investigative files.  *Cf. Heath v. Alabama*, 474 U.S. 82, 85 (1985) (explaining the doctrine of dual sovereignty); *see also Commonwealth v. Liebman*, 379 Mass. 671 (1980) (noting dismissal of a state indictment as the only remedy for a refusal by a federal court to order the release of federal grand jury testimony).

Category 3

On the issue of the disclosure of the search terms used by the government to capture the 1.1 million emails seized from NECC's server that it has produced to defendants, I part company with the Magistrate Judge's reasoning that the terms are not "material."  M.J. Dec. at 11.  I also disagree with the government's argument that the search terms fall "squarely" within the protections of the work-product doctrine.  Opp'n at 13.  The search terms are material in the sense that defendants have no other means by which to test the inclusiveness of the government's selection of the material that it produced pursuant to its obligations under Fed. R. Crim. P. 16(a)(1)(E).  (This is not to suggest bad faith on the government's part – indeed everyone agrees that the government's response to its disclosure obligations in this case has been exemplary – but a defendant's entitlement to discovery under Rule 16 is not measured by the government's good or bad faith).[3]

The reason the work-product doctrine does not apply is more nuanced, but it can be explained as follows.  The doctrine protects two categories of attorney work product: fact work product and opinion

---

[3] The suggestion at the hearing (if the court's memory is accurate), is that the terms are some 157 in number.

work product.  The production of fact work product may be compelled where a party demonstrates a "substantial need" for the information and an "undue hardship" should it not be produced.  *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988). Opinion work product, on the other hand, falls under a "near absolute" protection from disclosure.  *See DaRosa v. City of New Bedford*, 471 Mass. 446, 458-460 (2015) (explaining the ramifications of the distinction); *cf. San Juan Dupont Plaza Hotel*, 859 F.2d at 1015 ("[N]ot every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product.  Were the doctrine to sweep so massively, the exception would hungrily swallow up the rule.").

Here, there is little doubt that the search terms are fairly classified as fact discovery as they were developed by the government attorneys not as a means of constructing a legal theory of the case (in which case they would be presumptively protected), but as a mechanism for determining the scope of the government's obligation to produce discovery to the defendants.  *See San Juan Dupont Plaza Hotel*, 859 F.2d at 1016 (concluding that deposition exhibit lists are not opinion work product entitled to heightened protection because

"despite the revelations they contain as to an attorney's thought processes, the lawyer has had no justifiable expectation that the mental impressions revealed by the materials will remain private.").  I also find that the dual showings of need and hardship have been made.[4]  As defendants aptly, if slightly, overstate in their supporting Memorandum, "[w]hat will take five minutes to accomplish if the government produced the search terms will take hundreds of hours and tens of thousands of dollars to complete if [it does] not." Defs.' Mem. at 16.

Category 4

---

[4] This is the pragmatic conclusion reached almost uniformly in the civil context in which eDiscovery and the searches of massive electronic material is more common.  *See, e.g.*, *Smith v. Life Investors Ins. Co. of Am.*, 2009 WL 2045197, at *7 (W.D. Pa. July 9, 2009) (To demonstrate reasonableness of its search methodology, "[d]efendant must do more than summarily list the number of pages it has produced and the time and effort it has invested.  Rather, Defendant has a burden to demonstrate that its search for documents was reasonable.   A thorough explanation of the search terms and procedures used would be a large step in that direction." (citation omitted)); *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 110 (E.D. Pa. 2010) ("[The Court does not find that [search terms and methodology] are subject to any work product protection, as it goes to the underlying facts of what documents are responsive to Plaintiffs' document requests and does not delve into the thought processes of Defendants' counsel.").

The Magistrate Judge denied as premature the request that the government produce an exhibit list preliminarily indicating the items subject to automatic disclosure that it intends to introduce in its case-in-chief.  M.J. Dec. at 12.  At the same, she properly noted that while case authority supports the production of an exhibit list well before the seven days prior to trial specified by Local Rule 117.1, the discretion to enter such an order resides with the district court.  This is a discretion that I choose to exercise in the interest of expediting trial preparation by directing the defendants (and the government) to matters that will be of consequence to the actual prosecution and defense of the case.  It is difficult for me, as a former prosecutor, to imagine that the government is not well along in its structuring of a lengthy trial that is due to commence in some six months.  Consequently, I will order the production of a preliminary exhibit list within sixty (60) days of the date of this decision on the strict understanding that defendants are to make no use at trial or otherwise, for impeachment or any other purpose, any later additions or deletions from the list the government produces.

Category 5

While defendants' desire for the early production of grand jury testimony and exhibits is understandable, I fully agree with the Magistrate Judge that defendants have failed to show that they fall within the one recognized exception to the Jencks Act protections of grand jury secrecy.  M.J. Dec. at 13.[5]

Category 6

Defendants' final request, that the government be required to designate all known *Brady* material within the discovery it has produced, is a make-work request of no particular benefit that would serve no purpose other than manufacturing grounds for an eventual appeal.  As the court observed at the hearing, one man's *Brady* item is another woman's smoking gun.

ORDER

Consistent with the decision of this court, the government will undertake the following:

(1) Within thirty (30) days of today's date, to identify by Bates number all exhibits not previously identified that are referenced

---

[5] The government stated at the hearing that it will disclose Jencks Act material prior to trial, but has yet to decide whether to do so seven days before trial or earlier.

in the reports of investigative interviews previously produced to defendants;

(2)  Within sixty (60) days of today's date, to produce a preliminary designation of items in the discovery material that will be offered as exhibits in the government's case-in-chief;[6] and

(3)  Within ten (10) days of today's date, to produce to defendants the list of the search terms that were used to identify the 1.1 million emails that were produced.

In all other respects, the Magistrate Judge's Order is AFFIRMED.  The request for further production of material from state and other federal agencies is DENIED, as are the requests for early release of Jencks Act material and the designation by the government of items thus far disclosed that it believes to fall under the *Brady* rule.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[6] The court expects this to be a realistic list; it would not do, for example, to simply state that all items thus far produced are potential exhibits.