UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10363-RGS

UNITED STATES OF AMERICA

v.

BARRY J. CADDEN, et al.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS
COUNTS 1 AND 2 OF THE INDICTMENT
AND TO STRIKE THE MURDER
RACKETEERING ACTS FROM COUNT 1

June 6, 2016

STEARNS, D.J.

The defendants indicated below[1] seek dismissal of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) & (d), Counts 1 and 2, and/or the striking of the twenty-five incorporated racketeering acts involving alleged second-degree murder.[2]  As previously summarized by the court, the indictment involves the now defunct New

---

[1] This motion is filed by defendants Barry Cadden, Glenn Chin, Gene Svirskiy, Christopher Leary, Joseph Evanovsky, Scott Connolly, Sharon Carter, and Alla Stepanets.  Only Cadden and Chin are named in the murder predicate acts.  Robert Ronzio appears in the caption of the motion in which Michelle Thomas also joins, but neither is named in the challenged counts.

[2] The remaining racketeering acts are framed on separately alleged mail fraud schemes, 18 U.S.C. § 1341.

England Compounding Pharmacy, Inc., doing business as New England Compounding Center (NECC), and the allegedly contaminated drugs that it compounded and shipped nationwide. Defendants Barry Cadden and Glenn Chin are charged in the indictment with twenty-five acts of second-degree murder involving patient deaths in Michigan, Indiana, Tennessee, Maryland, Virginia, Florida, and North Carolina. The twenty-five patients died after being administered NECC-compounded doses of non-sterile methylprednisolone acetate (MPA), a steroid used to treat pain caused by swollen joints. More than 800 additional patients are alleged to have suffered complications of varying degrees of severity after taking the same drug. Defendant Cadden, a licensed pharmacist, served as NECC's President. Defendant Chin, also a licensed pharmacist, oversaw NECC's "Clean Rooms." Defendants Gene Svirskiy, Christopher Leary, and Joseph Evanovsky were licensed pharmacists who worked in the Clean Rooms. Defendant Alla Stepanets, also a pharmacist, among other jobs worked in the packing area verifying orders prior to shipment. Defendant Sharon Carter served as NECC's Director of Operations, while defendant Scott Connolly performed the duties of a pharmacy technician.[3]

---

[3] Connolly had been licensed as a pharmacist, but lost his license as the result of an earlier disciplinary action.

In support of their motion to dismiss, defendants make three separate arguments.[4]  First, defendants assert that the indictment's allegation of a "pattern" of racketeering activity is fatally inconsistent.  Second, they claim that the indictment fails to properly allege the elements of second-degree murder.  And third, they contend that the RICO statute itself is unconstitutionally vague as applied to them in their conduct of the business of NECC.[5]

In an earlier decision, the court explained what RICO intends in enhancing punishment for engaging in a "pattern of racketeering activity."

---

[4] A fourth argument involving the allegedly improper delegation of legislative power to a private industry group, the United States Pharmacopeia, has been previously addressed by the court.  *See United States v. Cadden,* 2016 WL 1948832 (D. Mass. May 3, 2016).

[5] This third argument has been effectively foreclosed by the weight of Circuit Court opinion and I see no reason to attempt to blaze any new trail on the facts of this case.  Defendants largely recognize the obstacles that they face, but posit the argument that the fact pattern alleged in the indictment describes an enterprise so removed from the traditional model of organized crime, *see* Dkt. #405 at 19-21, as to arguably fall outside the ambit of RICO.  It is true that most of the early RICO cases involved criminal syndicates of the Mafia-type, and the Godfather genre of crimes – extortion, loansharking, bookmaking, and so on – but the day is long past when the RICO statute could have been thought to be limited to the activities of classical organized crime.  *See United States v. Ashman*, 979 F.2d 469, 487 (7th Cir. 1992) (the Chicago Board of Trade – "We have repeatedly rejected that suggestion [of unconstitutional vagueness] in cases in which the enterprise was a legitimate enterprise.").  *See also United States v. Angelilli*, 660 F.2d 23, 31 (2d Cir. 1981) (finding the New York Civil Court an "enterprise" within the "quite broad . . . definition of 'enterprise'" in RICO); *cf. United States v. Anguilo*, 897 F.2d 1169, 1179 (1st Cir. 1990).

> A "pattern of racketeering activity" is defined as the commission of "at least two" related racketeering acts over a span of time. *See Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, 94 F.3d 721, 731 (1st Cir. 1996). To demonstrate relatedness, the predicate acts must "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise be interrelated by distinguishing characteristics and not be isolated events." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 44 (1st Cir. 1991). There must also be evidence of "continuity" sufficient to show that the predicate acts constituted a "pattern" – "a closed period of repeated conduct" – amounting to a threat of continued criminal activity or [an open-ended] one that is "a regular way of conducting . . . the RICO enterprise." *H.J., Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 243 (1989). [Finally,] [p]redicate acts (as listed in the statute) must be pled with particularity, *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997), and must be more than a "cause in fact" of a plaintiff's injury; they must be the proximate cause. *Holmes v. Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 266 n.12 (1992).

*Cadden,* 2016 WL 1948832, at *2 (footnote incorporated).

Defendants' argument that the indictment fails to allege a coherent "pattern" of racketeering activity can be summarized as follows. As defendants fairly read the indictment, the purpose of the unlawful enterprise, as reflected in the groupings of the mail fraud acts of racketeering, was to enrich Cadden and Chin and others by marketing substandard drugs manufactured on the cheap. "If [,however,] Cadden and Chin knew their drugs were so likely to kill people, then they knew such tragic end results would curtail or end their business, and reduce or extinguish the revenues that they allegedly sought to procure through the mail-fraud-based

4

racketeering acts." Dkt. # 405 at 4. Noting that a RICO pattern must consist of "related" acts, defendants argue that a murderous course of conduct is so irreconcilable with a scheme to defraud that the two cannot coexist "under one 'pattern' roof." *Id.*

In an extension of the logic of the argument, defendants contend that even if the predicate acts of second-degree murder can be shown to be related in some fashion to the scheme to defraud, they fail the closed-ended continuity element of RICO by virtue of the fact that the contaminated vials were shipped in May, June, and August of 2012, while NECC ceased doing business in October of 2012.[6] *See Giuliano*, 399 F.3d at 390 (sixteen racketing acts over a six-month period inadequate to establish closed-ended continuity). Similarly, defendants argue that because the first reports of deaths brought NECC to a screeching halt, open-ended continuity cannot be shown because of the absence of any probability of conduct "showing signs of extending indefinitely into the future." *Efron*, 223 F.3d at 16.

---

[6] It is true, as defendants point out, that while the concept of closed-ended continuity has not been precisely defined, courts have generally agreed that a duration of at least a year or more is required. *See Giuliano v. Fulton,* 399 F.3d 381, 390 (1st Cir. 2005); *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 16 (1st Cir. 2000); *Jackson v. BellSouth Telecomm.,* 372 F.3d 1250, 1266 (11th Cir. 2004); *United States v. Crysopt Corp.*, 781 F. Supp. 375, 383 (D. Md. 1991).

As a general matter, I agree with the government that the law is reasonably well settled (at least in the district courts) that the existence of a "pattern of racketeering activity" is a question of fact reserved for the jury at trial. *See* Dkt. # 456 at 7. My disagreement with the defendants, however, runs somewhat deeper. I see no compelling reason why a pattern of racketeering activity need satisfy a test of internal coherence or objective consistency. Criminal conduct does not always reflect the most rational of choices or even the most basic calculations of ultimate self-interest. If the government's allegations prove true, NECC will not be the first criminal enterprise undone by greed or a sense of invulnerability. *See* Azam Ahmed, *How El Chapo Was Finally Captured, Again*, N.Y. Times, Jan. 16, 2016, http://www.nytimes.com/2016/01/17/world/americas/mexico-el-chapo-sinaloa-sean-penn.html?_r=0. No argument has been made that Cadden and Chin set out to strangle the golden goose. But I expect to hear the government argue that the defendants' apparent success in cutting corners and enhancing profits without getting caught, led them into a self-deceptive state of impregnability that fed an increasingly reckless and heedless course of conduct.

This reading of the indictment also answers defendants' second contention, that the government will be unable to satisfy the continuity test

at trial.  The murder racketeering acts are simply a restatement of the tragic end results, far exceeding any loss of money or property, of the malfeasances that gave rise to the mail fraud scheme.  Consequently, I see no reason why the murder racketeering acts should not be seen as woven into the warp and woof of that conduct as a whole, which in the aggregate spanned some two and one-half years, a period comfortably approximate to the time frames that Circuit Courts have found to satisfy the closed-ended continuity requirement.  *See, e.g., United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 572 (8th Cir. 1996).[7]

    Cadden and Chin next argue that the indictment is defective for failing "to charge the required element of causation" in a case of second-degree murder.  The gist of the argument is that while the indictment specifies the reckless acts and omissions of which Cadden and Chin stand accused, it fails to give explicit guidance as to which act is the "but for" or "legal cause" of death in each of the twenty-five alleged homicides.

> The government is required to prove causation as part of the murder [racketeering acts] here.  And so they are required to charge it.  The defendants Cadden and Chin are entitled to know

---

[7] I also agree with the government that it may be able to prove the open-ended continuity element as well.  The case cited by the government, *United States v. Busacca*, 936 F.2d 232 (6th Cir. 1991), is apropos. "The lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption of that activity such as by an arrest, indictment or guilty verdict." *Id.* at 238.  Or as one might add, patient deaths.

> what they are accused of doing that caused each one of these deaths. Charging them with engaging in a litany of wrongdoing generally at NECC, and then applying that same litany to each of these three contaminated lots of MPA, does not answer that question and does not charge causation.

Dkt. # 405 at 15.

Defendants' argument combines an indisputable proposition – that a prosecution for second-degree murder requires proof of a causal connection between a defendant's reckless acts or omissions and a victim's death – with a dubious one – that the government is required to plead not only the proper elements of the offense, but also the means by which the offense was committed.

As the indictment is structured, it recites the definitional language of second-degree murder found in the law of each of the seven affected States. The allegation with respect to the eight Michigan victims is a template for the others.

> On or about the dates listed below, in the District of Massachusetts and elsewhere, defendants (1) CADDEN and (2) CHIN, acting in wanton and willful disregard of the likelihood that the natural tendency of their actions would cause death or great bodily harm, caused the deaths of the individuals listed below, that is, the individuals died as a result of receiving injections of the 06292012@26 lot of methylprednisolone acetate made and sold by NECC.

8

Dkt. # 1 ¶ 56.[8]

It is difficult to answer defendants' assertion that the government has failed to allege causation in the indictment on any plain reading of its text. There is no requirement in federal law that an indictment do more than properly plead the elements of an offense with enough clarity to enable a defendant to enter a plea without fear of double jeopardy. *United States v. Yefsky*, 994 F.2d 885, 893-894 (1st Cir. 1993).[9] I see nothing about the

---

[8] As murder is a common-law offense, it is not surprising that the various definitions of second-degree murder in the law of the seven affected States largely echo one another, particularly with respect to the alternative branch of malice aforethought, which punishes an unintentional killing resulting from a defendant's reckless and extreme disregard for human life. While the verbiage differs, e.g., Tennessee ("awareness of conduct reasonably certain to cause death"); Indiana ("awareness of a high probability that conduct would result in death"); Maryland ("while conscious of a high degree of risk to the lives of others, acting with extreme disregard of the life-endangering consequences"); Virginia ("willfully and purposefully embarking on a course of wrongful conduct likely to cause death and great bodily harm"); Florida ("any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual."); and North Carolina ("acting in a manner inherently dangerous to human life so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty, and deliberately bent on mischief"); the requisite state of mind giving rise to criminal liability is the same.

[9] I do not understand defendants to argue that the evidence of causation presented to the grand jury was inadequate or incompetent, perhaps recognizing that such a challenge, if made, would have very poor prospects. *See United States v. Williams*, 504 U.S. 36, 50 (1992).

9

indictment that fails this very liberal test. Ultimately, I agree with the government that that defendants' argument with respect to causation is appropriately reframed as "a sufficiency of the evidence challenge that will be answered by the jury at trial." Dkt. #456 at 15.[10]

### ORDER

For the foregoing reasons the motion to dismiss and/or strike the predicate acts of murder in the second degree is <u>DENIED</u>. [11]

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[10] Defendants also raise a "false friend" argument to the effect that the government is in over its head and has brought very serious charges "not know[ing] how those vials got contaminated, and it does not know what, if anything, Cadden or Chin did to cause that contamination." Dkt. # 405 at 16. The implication of the argument is that the government would itself benefit by being "required to make a specific and detailed pretrial showing of what, if any, specific actions of Cadden and Chin [it] intend[s] to prove that they caused the fungal contamination of the drugs in each of the 25 fatal vials before subjecting [defendants] to such a trial." *Id.* If the accusation that the government is proceeding to trial with no evidence to support the murder charges is true, the result will be an embarrassment for the government and our system of justice generally, but it is not an argument to be tested on a motion to dismiss. *See United States v. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011).

[11] Although defendants' motion is also directed to Count 2 of the indictment (RICO conspiracy), no separate argument is made for dismissal of this Count, which simply adds the element of a combination or agreement among the named defendants to violate the RICO law.