UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10363-RGS

UNITED STATES OF AMERICA

v.

BARRY CADDEN ET AL.

MEMORANDUM AND ORDER
ON DEFENDANTS' MOTIONS TO DISMISS
COUNT III OF THE INDICTMENT

September 21, 2016

STEARNS, J.

Before the court is a Rule 12(b)(3) attack by defendants on Count III of the indictment, which charges a conspiracy to defraud the United States, or more precisely, the U.S. Food and Drug Administration (FDA), pursuant to 18 U.S.C. § 371.[1]  Defendants variously assert that Count III is deficient because it fails to successfully plead a violation of § 371, fails to give adequate notice of the offense, and, as applied, is void for vagueness.  Defendant

---

[1] The principal arguments are made by defendant Gregory Conigliaro (Dkt #394), joined by defendants Alla Stepanets (Dkt #403), Barry Cadden (Dkt #410), Sharon Carter (Dkt #412), and Robert Ronzio (Dkt #413).  This order also considers a supplemental joint memorandum (Dkt #413) filed by Ronzio, Cadden, Carter, and Stepanets, as well as arguments advanced only by Ronzio (Dkt #417).

1

Robert Ronzio also contends that Count III as framed violates his right to protected speech under the First Amendment.[2]

In its operative paragraph, the Indictment charges that:

From in or around 1998, the exact date being unknown to the Grand Jury, through in or around October 2012, within the District of Massachusetts and elsewhere, defendants (1) CADDEN, (7) CARTER, (8) STEPANETS, (9) GREG CONIGLIARO, and (10) RONZIO, knowingly and willfully conspired and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to defraud the United States of and concerning its governmental functions and rights, hereinafter described, that is, of and concerning its right to have its business and affairs, and particularly the transaction of the official business of the Food and Drug Administration ("FDA"), conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment, and obstruction.

Ind. ¶ 77 (emphasis omitted).

In addressing a challenge to the legal (as opposed to factual) sufficiency of an indictment, a court must determine whether the indictment "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and . . . enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

---

[2] A recitation of the factual premises underlying the indictment and the roles most of these defendants played as managers and employees of the New England Compounding Center (NECC) may be found in *United States v. Cadden*, No. 14-10363-RGS, 2016 WL 3167066, at *1 (D. Mass. June 6, 2016).

*Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014) (a challenge to the sufficiency of an indictment is not an opportunity to determine the sufficiency of the evidence, but rather the court will assume the truth of the indictment's factual allegations); *United States v. Guerrier*, 669 F.3d 1, 3-4 (1st Cir. 2011) (same). Typically, an indictment need only set out the charge in the words of the statute itself, so long as it does so unambiguously and provides facts "specific enough to apprise the defendant of the nature of the accusation against him and to inform the court of the facts alleged." *United States v. Serino*, 835 F.2d 924, 929 (1st Cir. 1987).

Section 371 criminalizes conspiracies "to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose." The "defraud clause," which is at issue here, encompasses both schemes "aiming to deprive the government of money or property," and schemes seeking "to interfere with government functions." *United States v. Goldberg*, 105 F.3d 770, 773 (1st Cir. 1997). Count III relies on the functional interference aspect of the defraud clause.

There are three elements of a § 371 conspiracy under the defraud clause: "'an agreement, the unlawful objective of the agreement, and an overt act in furtherance of the agreement.' The objective of the agreement is

3

unlawful if it is 'for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" *United States v. Barker Steel Co.*, 985 F.2d 1123, 1128 (1st Cir. 1993) (internal citation omitted) (quoting *United States v. Hurley*, 957 F.2d 1, 4 (1st Cir. 1992), and *Dennis v. United States*, 384 U.S. 855, 861 (1966)).

Count III of the indictment clearly satisfies the pleading requirements of *Barker Steel*, alleging as it does the required elements of a conspiracy to defraud, as well as the requisite overt act(s). *See* Ind. ¶¶ 89-108 (misrepresentations to the FDA, ¶¶ 89-91; fabrication of patient names, ¶¶ 92-101; orders shipped to patients under false names, ¶ 102; and efforts to obstruct a state investigation by fabricating prescriptions, ¶¶ 103-108). The remaining issue is whether indictment articulates the unlawful objective of the agreement with sufficient clarity to place a reasonable defendant on notice of the accusation he or she faces.[3]

---

[3] Defendants' assertion that the court's review of the pleadings must be conducted with "special scrutiny" adds little, if anything, to the analysis. Defendants cite *dicta* from, among other cases, *United States v. Coplan*, 703 F.3d 46, 61 (2d Cir. 2012), remarking on the historical reluctance of many courts to apply an overly expansive reading of common-law conspiracy theories in deciding the reach of § 371, although conceding that it is "now well established" that § 371 encompasses any conspiracy undertaken with the goal of impairing government functions, and that only the Supreme Court has the power to alter this landscape. *Id.* at 61-62. To the considerable extent that defendants rely on the Rule of Lenity, *see Tanner v. United States*, 483 U.S. 108, 131 (1987), the government is correct that this rule of

Here the grand jury has more than adequately defined the purpose of the conspiracy: To induce regulatory authorities, including the FDA, into believing that NECC was doing business as a compounding pharmacy when in fact it was in the business of manufacturing drugs. *See* Ind. ¶ 78. By erecting and maintaining such a façade, it is alleged that NECC avoided the higher level of regulatory oversight that state and federal agencies, including the FDA, would have brought to bear. *Id.* ¶ 79. The issue is not whether the theory is right or wrong – that is a matter for the jury – but whether it is stated with sufficient specificity to enable a defense. It is.[4]

---

statutory construction is of marginal relevance in assessing the legal adequacy of an indictment.

[4] Defendants make the curious argument that the theory fails because of regulatory hesitation and incompetence. In this regard, they cite testimony of FDA Commissioner Margaret Hamburg before a House of Representatives oversight subcommittee investigating the spinal meningitis outbreak, in which she expressed doubt about the scope of the FDA's regulatory authority over compounding pharmacies given "gaps and ambiguities in the law." Defendants argue that because of the Commissioner's concession that a "bright line between compounding pharmacies and [drug] manufacturers did not exist," the court *ipso facto* should hold that that the indictment fails to plead their requisite intent to defraud the FDA. Dkt #395 at 5-6. In other words, defendants should be rewarded for their success in fooling the FDA into believing that they were doing business as a compounding pharmacy (over which the FDA's authority was ill-defined) instead of as a manufacturer (over which the FDA's authority was clear).

5

Defendants' remaining arguments have even less heft. The claim that a § 371 indictment may not permissibly allege non-criminal acts in furtherance of a conspiracy, *see* Dkt #395 at 18, is foreclosed by First Circuit precedent. *See United States v. Tarvers*, 833 F.2d 1068, 1075 (1st Cir. 1987) ("The statute does not require that the means used to achieve the unlawful goal of the conspiracy be unlawful."). Equally meritless is the claim made by four defendants asserting that a § 371 conspiracy based on the defraud clause must allege a monetary loss to the United States (and not merely interference with a governmental function). *See Barker Steel*, 985 F.2d at 1128 (the "broad" language of § 371 is "not limited to conspiracies which defraud the government of money or property").

Some additional arguments are directed more at issues of factual rather than legal sufficiency, but to the extent they implicate matters of law I will comment briefly. First, defendants argue that the indictment fails to establish "that all five alleged conspirators formed an agreement to do a particular thing, or to pursue a particular course of conduct," Dkt #395 at 15, particularly given the fact that the conspiracy is alleged to have had its inception prior to several of them becoming employed at NECC. Defendants also claim that the indictment fails to indicate the "specific way" in which the conspiratorial agreement was formed. *Id.* In the first instance, there is no

requirement in the law of conspiracy that a defendant be shown to have been present at the conspiracy's creation, or to have been privy to every one of its details, or even to have been aware of the identity of all of the participants. *See United States v. Monserrate-Valentín*, 729 F.3d 31, 49 (1st Cir. 2013); *United States v. Soto-Beníquez*, 356 F.3d 1, 19 (1st Cir. 2003). Nor is the government required to show that the conspiratorial agreement was formalized in express words or writings. *United States v. Patrick*, 248 F.3d 11, 20 (1st Cir. 2001) (the law of conspiracy encompasses not only express compacts, also "tacit agreement[s] shown from an implicit working relationship"); *see also United States v. Boylan*, 898 F.2d 230, 241-242 (1st Cir. 1990) ("[C]onspiratorial agreement . . . can plausibly be inferred from the defendants' words and actions and the interdependence of activities and persons involved.").

Along the same lines, defendants assert that Count III is deficient because it is "completely devoid of any allegation as to motive." Dkt #395 at 16. While purpose (object) is an element of the crime of conspiracy, motive (while often relevant) is not. *See United States v. Gleason*, 616 F.2d 2, 16 (2d Cir. 1979). Of similar ilk is the argument that the indictment fails to allege any specific way in which an FDA function was "actually interfered with" by the conspiracy. *Id.* at 17-18. This argument ignores a fundamental principle:

That the conspiratorial "agreement is 'a distinct evil,' which 'may exist and be punished whether or not the substantive crime ensues.'" *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)).

Finally, defendants object to the fact that Count III lists among the conspirators' overt acts misrepresentations made to a state agency, the Massachusetts Board of Registry in Pharmacy, during the course of its investigation of NECC. Dkt #395 at 18-19. It is true that a § 371 conspiracy to defraud requires proof that a goal of the conspiracy is to impede a function of the *federal* government, and that protecting the integrity of the functions of state or private entities is not a matter with which § 371 is concerned. *See Tanner*, 483 U.S. at 130 (section 371 defines its crimes "not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy, but also — and most importantly — the *target* of the conspiracy"). However, the assertion that the defendants made similar efforts to deceive the state Board of Registry does not subvert the allegation that the FDA was the ultimate target of the conspiracy. Efforts to conceal the existence of a conspiracy may be alleged as acts in its furtherance where they contribute to the accomplishment of the overall objectives of the conspirators. *United States v. Upton*, 559 F.3d 3, 14 (1st Cir. 2009). In the

8

context of § 371, this has been held to include steps such as giving perjured testimony to a state fire marshal in an arson investigation as part of a scheme to interfere with federal bankruptcy proceedings. *See United States v. Davis*, 623 F.2d 188, 190-192 (1st Cir. 1980).[5]

Defendant Ronzio in a separate memorandum repeats the arguments made by Conigliaro and offers two additional challenges to Count III.[6] First,

---

[5] Defendants raise in passing a generic challenge to the constitutionality of § 371, asserting that the statute as applied is "void for vagueness." The precise basis for this challenge is unclear; defendants largely recite various formulations of the vagueness doctrine in the context of the Fifth Amendment's Due Process Clause. The overarching concern appears to be that the statute provides no notice that conduct of the sort alleged in Count III is subject to criminal liability. In general, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). In evaluating a void for vagueness challenge, a court is to consider not only the words of the statute itself, but also "judicial constructions of the statute." *United States v. Nieves-Castaño*, 480 F.3d 597, 603 (1st Cir. 2007). Longstanding judicial interpretations of § 371 have made clear that the statute's defraud clause constitutionally proscribes efforts "to thwart the operation and purpose of a government program through deceit and trickery." *Barker Steel*, 985 F.2d at 1131; *see also Dennis v. United States*, 384 U.S. 855, 861 (1966); *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924). I can add nothing to this long line of precedent in the context of this case.

[6] The government perceives a third argument in Ronzio's memorandum: a claim that the conduct alleged in the indictment could not have been criminal because the FDA had inspected NECC in 2003 and had effectively given it permission to operate as a compounding pharmacy. Putting aside the fact that the argument relies on factual assertions outside

he argues that NECC had no duty to make regulatory disclosures to the FDA, and that he likewise had no such duty in his position as national sales director for the company. Consequently, he argues, he cannot be punished for failure to make a disclosure where he had no duty to do so. Dkt #417 at 9 (citing *United States v. Anzalone*, 766 F.2d 676, 682-683 (1st Cir. 1985)). The presence or absence of a duty to disclose is simply irrelevant to Ronzio's culpability; the indictment charges Ronzio and his co-defendants not with failure to take some act, but "with defrauding the government by their actions." *Barker Steel*, 985 F.2d at 1130. These actions include at least one overt act in furtherance of the conspiracy attributed to Ronzio personally. Ind. ¶ 101.[7]

Finally, Ronzio argues that Count III infringes his First Amendment rights by punishing legitimate commercial speech holding NECC out as a compounding pharmacy. The exact statements Ronzio has in mind are not

---

the four corners of the indictment, *Guerrier*, 669 F.3d at 3-4, a party asserting estoppel against the government faces an almost insurmountable barrier, *see Costa v. I.N.S.*, 233 F.3d 31, 38 (1st Cir. 2000) ("[E]stoppel against the government if it exists at all is hen's-teeth rare.").

[7] Ronzio requests that this paragraph of the indictment be stricken as surplusage. The paragraph, however, is not irrelevant or unfairly prejudicial. It fleshes out Ronzio's alleged role in the conspiracy, and serves as notice of the factual basis of the charge he faces. There is simply no basis for striking the language from the indictment. *See United States v. Lewis*, 40 F.3d 1325, 1346 (1st Cir. 1994).

altogether clear from his memorandum, although the communications cited in Count III are for the most part internal messages exchanged within NECC, and not statements designed to "assist[] consumers and further[] the societal interest in the fullest possible dissemination of information." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561-562 (1980). Regardless, "speech or writing used as an integral part of conduct in violation of a valid criminal statute," as is alleged here, is not entitled to First Amendment protection. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949); *see Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002) (noting that commercial speech which "concerns unlawful activity or is misleading . . . is not protected by the First Amendment"); *United States v. Sayer*, 748 F.3d 425, 434 (1st Cir. 2014) (collecting cases and concluding that speech which "served only to implement [the defendant]'s criminal purpose" was not protected by the First Amendment).

### ORDER

In light of the foregoing, defendants' motions to dismiss Count III of the indictment are <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

UNITED STATES DISTRICT JUDGE